IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEPHEN E. LEE, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: DLB-21-1609 |
| TRACY MODLIN, *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiff Stephen E. Lee, proceeding *pro se*, sues Tracy Modlin, Brandon Pippens, Craig Cooke, John Clow, Morris Ricks, Anthony Gibson, Darnell Davis, and the United States of America (collectively, "U.S. defendants"), claiming violations of his constitutional rights and intentional torts. ECF 1, at 5. The individual U.S. defendants are federal employees with the U.S. Department of Housing and Urban Development – Veterans Affairs Supportive Housing ("HUD-VASH") program. Lee alleges he received a housing voucher through the HUD-VASH program but was misled by a HUD-VASH case worker about the possibility of representation at a hearing before the Housing Authority of Baltimore City. Following the hearing, Lee's voucher was revoked, and Lee eventually became homeless. At the conclusion of a nearly two-year long investigation by a Department of Veterans Affairs ("VA") patient advocate into whether Lee had in fact been misled, Lee made a statement to the investigator that the investigator perceived as a threat, and Lee was arrested and charged with second-degree assault. Lee was subsequently acquitted.

The U.S. defendants move to dismiss for lack of subject matter jurisdiction. ECF 22. The motion has been fully briefed. ECF 26 & 32. No hearing is necessary. *See* Loc. R. 105.6. For

the following reasons, the motion to dismiss is granted in part and denied in part, and Lee's claims relating to the denial of VA benefits are dismissed.

**I.      Background**

The HUD-VASH program is a collaborative program between HUD and the VA that combines HUD housing vouchers with VA supportive services. HUD-VASH helps veterans who are homeless and their families find permanent housing. HUD provides rental assistance vouchers for privately-owned housing to veterans who are eligible for VA healthcare services and are experiencing homelessness. Because eligibility for the program turns on eligibility for VA healthcare services, the VA is responsible for determining eligibility. *See* 38 U.S.C. § 2003(b).

Lee is a veteran. In May 2017, Lee began receiving HUD-VASH vouchers to subsidize his monthly rent. ECF 1, at 7; ECF 1-9, at 2.[1] The Housing Authority of Baltimore City ("HABC") had some role in administering his housing vouchers. *See* ECF 1, at 7 (referring to HABC hearing regarding Lee's HUD-VASH vouchers). Sometime before Lee began receiving HUD-VASH vouchers, Lee's son, who lived with Lee, was arrested and incarcerated. ECF 1-1, at 5; ECF 1-2, at 3. HABC policies require denial or termination of program assistance if any member of the family engages in drug-related or violent criminal activity or other serious criminal activity. ECF 1-2, at 2–3. Following his son's arrest, Lee contacted VA employee Pippens. ECF 1-1, at 4. Pippens instructed Lee that he did not have to notify HABC immediately of his son's arrest and absence from the home. *Id.* at 4–5; ECF 1-2, at 2.

---

[1] In resolving the motion to dismiss, the Court accepts all well-pleaded allegations as true. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (citing *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). Exhibits attached to the complaint are part of the complaint "for all purposes." Fed. R. Civ. P. 10(c); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

On January 18, 2018, HABC held a hearing to determine Lee's continued eligibility for HUD-VASH vouchers. ECF 1, at 7; ECF 1-1, at 4. It is not clear why the hearing was scheduled, but it is possible it was related to Lee's lease renewal. *See* ECF 1-1, at 4 (mentioning January lease renewal). Prior to the hearing, Pippens told Lee he would appear at the hearing to speak about his earlier instruction to Lee. ECF 1, at 7; ECF 1-2, at 2. Pippens' supervisor, Modlin, refused to allow Pippens to attend the hearing. ECF 1, at 7; ECF 1-1, at 4–5; ECF 1-2, at 2. Lee represented himself at the hearing and mentioned Pippens' instruction. ECF 1-1, at 3. HABC gave Lee five days to substantiate his testimony regarding Pippens. *Id.* at 3, 5. Lee did not meet this deadline because Modlin refused to provide any documentation. ECF 1-1, at 5. HABC discharged him from the HUD-VASH program on January 23. ECF 1, at 7; ECF 1-1, at 3, 5. As a result of his discharge, Lee's monthly rent payments increased from $225 to $1,473. ECF 1, at 7. On October 25, 2018, Lee no longer could afford his unsubsidized rent and became homeless. ECF 1-1, at 4, 6 (seeking reimbursement for unsubsidized rent from February to September 2018).

On April 18, 2018, Lee contacted VA patient advocate Ricks regarding Pippens and Lee's discharge from the HUD-VASH program. ECF 1, at 7; ECF 1-1, at 6. As part of his investigation, Ricks interviewed Pippens on February 23, 2019, and Pippens admitted to telling Lee both that Lee was not required to notify HABC immediately of his son's arrest and that he would appear at Lee's hearing. ECF 1-1, at 4; ECF 1-2, at 2.

From February to November 2019, Lee stayed at the Helping Up Mission's ("HUM") overnight guest services facility at least four nights a week. ECF 1-4, at 2. On August 12, 2019, Lee began residing at HUM, a nonprofit homelessness and addiction treatment center, as part of its VA Housing Program. ECF 1-4, at 1. It is unclear how the HUM's overnight guest services and VA Housing Program are related. At some time when Lee was at HUM, a conversation

between Lee and Modlin occurred in HUM program director Savage's office, with Savage present, where Modlin said she "is HUD-VASH" and if she has anything to do with Lee getting a housing voucher, his chances are "slim to none" and/or "it won't happen." ECF 1-3, at 5; ECF 26, at 3.

On August 22, Lee contacted Ricks and stated he had been applying for HUD-VASH every 60 days since January 2019, and that he felt the program administrators were retaliating against him because of his discharge from the program following the HABC hearing. ECF 1-2, at 2. On September 6, Ricks made a request with the VA on behalf of Lee, seeking reinstatement of Lee's housing voucher, reimbursement for Lee's increased rent payments, and punitive damages for pain and suffering. *Id*. Ricks noted the basis for the request was his investigation and interview with Pippens. *Id.* On September 9, VA employee Clow responded to the request and stated HABC had discharged Lee from the HUD-VASH program because of his son's arrest and because Lee had previously been discharged from the HUD-VASH program on another occasion and had a history of violent and threatening behavior. *Id.* at 2–3.

On October 18, Lee met with Ricks, presumably to review the results of Ricks' investigation and the request. ECF 1, at 7; ECF 1-1, at 6. Lee became upset when he saw that Ricks had not referred to Modlin by name in his notes. ECF 1, at 7; ECF 1-1, at 7. Lee stated, "stop playing with me because the old me would shoot this place up." ECF 1-1, at 7. Lee talked himself down from his anger. *Id.* The VA police or security arrived and interviewed Lee; Lee explained what happened, and he was deemed not a threat and released. *Id.*

On October 21, Lee was discharged from the HUM VA Housing Program, nominally because the program had a 60-day cap that Lee had exceeded. ECF 1-4, at 1. Lee believes Ricks contacted Clow and/or another VA employee, Cooke, about Lee's perceived threat on the 18th, and that Clow or Cooke then contacted Savage to have Lee "wrongfully evicted from the VA

4

transitional housing program." ECF 1-1, at 6 (stating Cooke contacted Savage); ECF 1-9, at 1–2 (stating Clow contacted Savage); *see also* ECF 26, at 3 (stating Savage told Lee to direct questions about his discharge from HUM's program to either Clow or Cooke). Lee's suspicions are founded on a conversation with VA police the same day as his discharge from HUM. ECF 1-9, at 1. Lee was told there was no warrant for his arrest and that the VA police did not call VASH employees to inform them of what happened on the 18th. *Id.* After speaking to the VA police, Lee visited Ricks, and Ricks suggested Lee leave the building. *Id.* at 2.

Sometime over the next few days, police issued a warrant for Lee's arrest for the charge of second-degree assault relating to his October 18 interaction with Ricks. ECF 1-1, at 7. Ricks represented that "people feared for their lives" following Lee's conduct that day. *Id.* On November 4, Lee was arrested. *Id.* at 2 (stating "I was wrongfully detained/incarcerated for approx. 4 months" beginning on November 4, 2019). Following his arrest, Lee lost all his personal property, including clothing, jewelry, and identifications. *Id.* Lee retained an attorney for $10,000. *Id.*; ECF 1-5. At a jury trial on March 9, 2020, the only witness from the same office as Ricks testified he or she did not fear for his or her life, and Lee was acquitted. ECF 1-1, at 6–7. Lee returned to HUM on March 10 and was denied housing. *Id.*

On December 18, 2020, Lee filed a Federal Tort Claims Act ("FTCA") complaint with the VA. ECF 1-1, at 2. He claimed wrongful incarceration resulting in the loss of all his property and mental anguish, and that he continued to be wrongly denied VA services. *Id.* He sought $51,392 for property damage and $2,000,000 for personal injury. *Id.* The VA denied Lee's FTCA claim on January 27, 2021. *Id.* at 1. The VA interpreted Lee's claim as alleging injury related to the loss of his "VA housing vouchers/benefits" and concluded it was not cognizable under the FTCA. *Id.*

Lee filed this action on June 30, 2021. ECF 1. He asserts claims of "malicious prosecution, wrongful arrest, wrongful eviction from VASH, abuse of authority, false imprisonment, discrimination, and bias." *Id.* at 5. As the basis for jurisdiction, he cites *Bivens vs. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Id.* In his reply, he clarifies that he also claims the FTCA as a basis for jurisdiction. ECF 26, at 4–6. He seeks $5,000,000 plus $10,000 for attorneys' fees. ECF 1, at 6. The U.S. defendants move to dismiss for lack of subject matter jurisdiction. ECF 22.[2]

## II.   Standard of Review

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) raises the question of whether the Court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "Federal courts are courts of limited jurisdiction[,]" possessing "only that power authorized by Constitution and statute." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). The plaintiff, as the party asserting jurisdiction, bears the burden of establishing it. *Id.* Where, as here, defendants contest subject matter jurisdiction "by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper"—a facial challenge to jurisdiction—the plaintiff "is afforded the same procedural protections as he would receive under a Rule 12(b)(6) consideration[.]" *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013) (quoting *Kerns v.*

---

[2] In addition to suing the U.S. defendants, Lee sued Rasheed Savage, a program manager at HUM. Savage has failed to plead or otherwise defend, and the Clerk of the Court entered an order of default against him on January 25, 2022. ECF 28. It is not clear which of Lee's claims, if any, relate to Savage. In Lee's Motion for Clerk's Entry of Default against Savage, ECF 27, Lee requested $3,500 in damages to compensate for four watches allegedly stolen after a HUM employee gave Lee's backpack to the wrong person.

*United States*, 585 F.3d 187, 192 (4th Cir. 2009)) (internal quotation marks omitted).  Dismissal for lack of subject matter jurisdiction is proper "where a claim fails to allege facts upon which the court may base jurisdiction."  *Davis*, 367 F. Supp. 2d at 799 (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

The Court is mindful that Lee does not have counsel.  The Court is required to liberally construe *pro se* complaints.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "Courts are not required," however, "to conjure up questions never squarely presented to them."  *Deabreu v. Novastar Home Mortg., Inc.*, 536 F. App'x 373, 375 (4th Cir. 2013) (per curiam) (unpublished) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).  "The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate."  *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990).

### III. Discussion

#### A. The Veterans' Judicial Review Act

The U.S. defendants make a single argument in their motion to dismiss.  They assert the Court lacks jurisdiction over Lee's claims because the Veterans' Judicial Review Act ("VJRA"), Pub. L. No. 100-687, 102 Stat. 4105 (1998), "broadly divests all federal district courts . . . of jurisdiction to review questions of law and fact necessary to VA benefits determinations."  ECF 22-1, at 5.

Section 511(a) of the FJRA provides:

> The Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans . . . .  [T]he decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a); *see also Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012). Courts have interpreted § 511(a) as precluding jurisdiction over any claim that seeks review of a VA benefits determination, either directly or indirectly. *See Newcombe v. United States*, 933 F.3d 915, 917 (8th Cir. 2019) ("A district court does not have jurisdiction over any claim that would require it to review a VA benefits determination, even if the claim is not for the benefits themselves."); *Hairston v. DVA, Regional VA Office Martinsburg*, 841 F. App'x 565, 570 (4th Cir. 2021) (unpublished) (holding discrimination claim against VA representatives, "read liberally and fairly understood," was covered by § 511(a) because it required the Court "to determine [the plaintiff's] eligibility for pension benefits").

For example, in *Weaver v. United States*, 98 F.3d 518 (10th Cir. 1996), a veteran filed a *pro se* complaint after the regional VA office rejected his claim for disability benefits. *Id.* at 519. He alleged that VA employees had conspired to conceal or lose his medical records in an attempt to prevent him from receiving just disability compensation, violated their fiduciary trust and contractual agreement with him, violated the "Soldiers and Sailors Relief Act of 1940," rendered a biased decision against him, "violated R.I.C.O.," and conspired to commit fraud and misrepresentation. *Id.* The district court dismissed all claims for lack of subject matter jurisdiction, and the Tenth Circuit affirmed. The Court reasoned that, under § 511(a), VA administrative decisions are "unreviewable in the federal courts." *Id.* (citing 38 U.S.C. § 511(a)). It held § 511(a) precluded review of not only the underlying benefits determination, but also the plaintiff's other claims of conspiracy, fraud, and misrepresentation. *Id.* at 520. The Court examined "the substance of these [other] allegations, rather than the plaintiff's labels, to determine their true nature" and concluded "they seek review of actions taken in connection with the denial of [the plaintiff's] administrative claim for benefits." *Id.* (citing *Tietjen v. U.S. Veterans Admin.*,

8

884 F.2d 514 (9th Cir. 1989) (holding substance of complaint sought review of benefits determination, despite characterization as a constitutional challenge)).

Likewise, in *Price v. United States*, 228 F.3d 420 (D.C. Cir. 2000) (per curiam), the D.C. Circuit Court of Appeals held § 511(a) applied to claims connected to "VA decisions affecting the provision of veterans' benefits," *id.* at 421, including any "claims whose resolution would require the court to intrude upon the VA's exclusive jurisdiction" and "determine whether the VA acted properly" in handling the underlying benefits determination, *id.* at 422 (citing cases). The plaintiff veteran had filed a *pro se* complaint alleging (1) the VA wrongfully failed to reimburse him for medical expenses and (2) a credit bureau subsequently caused him harm by persistently seeking to collect on his unpaid medical bills. *Id.* at 421. The Court concluded that, whether the claims against the VA were interpreted as a direct challenge to the administrative determination or a tort claim for the failure to pay medical bills brought under the FTCA, the district court lacked jurisdiction under § 511(a) because "a determination whether the VA acted in bad faith or with negligence would require the district court to determine first whether the VA acted properly in handling [the plaintiff's] request for reimbursement[.]" *Id.* at 422. With the federal claims dismissed for want of subject matter jurisdiction, the Court affirmed the dismissal of the supplemental state law claims as well. *Id.*

The U.S. defendants cite *Weaver* and *Price* and request that the Court dismiss all of Lee's claim as connected to the denial of his HUD-VASH housing voucher. ECF 22-1, at 6–8. However, the reach of § 511(a) is not without limits, and it does not automatically cover all claims asserted alongside a veteran's challenge to a benefits determination. The *Weaver* Court noted that the veteran's complaint also sought damages "in excess of the benefits sought and denied." *Weaver*, 98 F.3d at 520. From this, the Court assumed "his allegations against the individual VA employees

9

are separate claims not precluded from judicial review . . . ." *Id.* The Court held, as an alternative basis for dismissal, that the claims were nonetheless barred by sovereign immunity, but *Weaver* is clear that claims divorced from the underlying benefits determination are not necessarily precluded from judicial review by § 511(a). *Id.*

Other courts have reasoned similarly and allowed claims to proceed despite the government's assertion that the VJRA precluded review. In *Smith v. United States*, 7 F.4th 963 (11th Cir. 2021), the Eleventh Circuit conducted a thorough analysis of § 511(a) and dismissed only some of the plaintiff's FTCA claims for lack of subject matter jurisdiction. The Court asked whether the plaintiff's claims were, "in whole or in part, tort claims viable under the FTCA," or whether the plaintiff had "dressed up benefits claims as tort claims in order to seek impermissible judicial review of a decision of the Secretary?" *Id.* at 985. In answering that question, it divided the plaintiff's negligence claims into two groups: (i) those that concerned decisions about the approval, authorization, and scheduling of medical treatment, and (ii) those that concerned the failure to diagnose and properly treat his cancer and otherwise to "generally manage, coordinate, and monitor his medical care." *Id.* at 985–87. The latter group of claims did "not require the district court to decide whether [the plaintiff] was 'entitled to benefits,' nor d[id] they 'require the court to revisit any decision made by the Secretary *in the course of making benefits determinations*.'" *Id.* at 987 (quoting *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1025 (9th Cir. 2012)) (emphasis added in *Smith*). Similarly, in *Thomas v. Principi*, 394 F.3d 970 (D.C. Cir. 2005), the D.C. Circuit distinguished its earlier decision in *Price* and held the plaintiff "has alleged at least some VA actions that the district court can adjudicate without 'determin[ing] first' whether [he] was entitled to a certain level of benefits." *Id.* at 974. Specifically, claims of intentional infliction of emotional distress for covering up the plaintiff's schizophrenia diagnosis

10

for years and negligence and medical malpractice for failing to inform the plaintiff of his diagnosis survived. *Id.* The questions of law and fact raised by these claims related "to whether the alleged withholding of the diagnosis states a tort claim, and resolution of those questions [wa]s not 'necessary' to the benefits determination." *Id.*

So, the question here is whether Lee's claims are, "in whole or in part, tort claims viable under the FTCA, or has [Lee] dressed up benefits claims as tort claims in order to seek impermissible judicial review of a decision of the Secretary?" *See Smith*, 7 F.4th at 985; *see also Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1025 (9th Cir. 2012) (discussing cases and delineating scope of § 511(a)). To answer this, the Court must examine the substance of Lee's claims and the questions of law and fact they engender.

The U.S. defendants argue Lee's allegations, in substance, are "nothing more than an attempt to dispute the denial of his HUD-VASH housing voucher in January 2018." ECF 22-1, at 7. They view his complaint as detailing "the reasons he believes the denial of his housing benefits occurred," rather than stating any claims unrelated to that decision. *Id.* From their perspective, any "determination as to whether the VA acted in bad faith or with maliciousness in making its benefits decision would require the district court to determine first whether the VA acted properly in denying Mr. Lee's HUD-VASH housing benefits," so review of all Lee's claims is foreclosed by § 511(a). *Id.* at 7–8. In his opposition, Lee states he is asking the Court "to rule on malicious acts committed by VA employees." ECF 26, at 1, 4. He offers a handful of examples:

> 1) purposely stalling the investigation and taking 1 YEAR 10 months to give [him] documents to substantiate [his] claim that [he] was misled by VASH employee Brandon Pippens.
>
> 2) Wrongfully evicting [him] from "Helping Up Mission" shelter the same day that [he] argued with Mr. Morris Ricks.
>
> 3) Mr. Morris Ricks took out a warrant for [his] arrest for 2nd degree assault after [he] was interviewed by the VA police. [He] was not deemed a threat and released.

11

> 4) Denying [him] shelter at the Helping Up Mission after being acquitted of the charges Mr. Morris Ricks bought against [him].

*Id.* at 4. The U.S. defendants reply that regardless of Lee's characterization of his claims, they all "stem from his denial of the housing voucher," and he should not be allowed to "circumvent the VJRA's review procedure[.]" ECF 32, at 2.

Only some of Lee's claims are connected to the denial of his benefits and must be dismissed for lack of subject matter jurisdiction. The Court agrees with the U.S. defendants that many of Lee's allegations concern his discharge from HUD-VASH, the subsequent investigation, and denials of Lee's efforts to reenter the program. These allegations and the claims they support fall cleanly within the scope of § 511(a) because they question either the process or the outcome of the VA's benefits determinations. Lee's claim of "wrongful eviction from VASH" falls within this group for obvious reasons. His "abuse of authority" and "bias" claims are likewise affected because they arise from the alleged conduct of Pippens, Modlin, Ricks, and possibly others in purposefully stalling the investigation into Lee's discharge and repeatedly refusing him reentry into the program. Addressing these claims would require the Court to determine why Lee was discharged from the housing program and whether his discharge was proper. This, the Court cannot do. Lee's claims for "wrongful eviction from VASH," "abuse of authority," and "bias" are dismissed for lack of subject matter jurisdiction. 38 U.S.C. § 511(a).

But not all of Lee's claims call into question the validity of the VA's denial of his participation in the HUD-VASH program and the related investigation. Lee also claims "malicious prosecution, wrongful arrest," and "false imprisonment." ECF 1, at 5. In his FTCA form, he stated he was "wrongfully detained/incarcerated for approx. 4 months," from November 4, 2019 to March 10, 2020. ECF 1-1, at 2. These claims arise from allegations that, following Lee's meeting with Ricks on October 18, 2019, Lee was arrested, charged with second-degree assault, and

acquitted following a jury trial. ECF 1-1, at 6–7. Lee alleges his arrest, prosecution, and detention were motivated by Ricks' false statements to VA police. *Id.* These claims—regardless of whether they may not be viable for other reasons—are entirely separate from any benefits determination. No question of law or fact necessary to the adjudication of these claims requires the Court "'to revisit any decision made by the Secretary *in the course of making benefits determinations*,'" *see Smith*, 7 F.4th at 987 (emphasis in original), or to "'determin[e] first' whether [Lee] was entitled to a certain level of benefits," *see Thomas*, 394 F.3d at 974. Thus, like the handful of surviving claims in *Smith* and *Thomas*, these claims fall outside the scope of § 511(a). The motion to dismiss therefore is denied as to these claims.

Lee also claims "discrimination." ECF 1, at 5. This claim refers to allegations that he was discharged from HUM's "VA transitional housing program" for "something that had nothing to do with [him] as a resident at the mission," when other veterans were not. ECF 1-1, at 6. It is not clear whether HUM's VA transitional housing program is a VA benefit or otherwise implicates a VA benefits determination. Its name suggests it might. Additionally, Lee alleges a VA employee called HUM's program director to have Lee "wrongfully evicted" from the VA transitional housing program, ECF 1-1, at 6; ECF 1-9, at 1–2, indicating some VA determination may be involved. To the extent Lee's participation in the program depended on a VA benefits determination, Lee's claim of "discrimination" also falls within the scope of § 511(a) because the Court would have to determine why Lee was discharged and whether his discharge was the result of discrimination. But the Court presently has no information on the nature of HUM's program and any relationship it has with the VA, so the motion to dismiss is also denied as to Lee's "discrimination" claim.

13

## IV.     Conclusion

Section 511(a) of the VJRA limits this Court's ability to review claims and issues relating to the VA's benefits determinations.  Some of Lee's claims fall within that limitation.  Others do not.  The VJRA prevents the Court from reviewing Lee's claims arising from his alleged discharge from the HUD-VASH program, subsequent denials of his attempts to reenter the program, and the investigation into the HABC hearing.  Accordingly, the motion to dismiss is granted in part as to those claims.  The motion to dismiss is denied in part as to Lee's remaining claims which arise from his alleged arrest, prosecution, incarceration, and acquittal following his October 18, 2019 meeting with Ricks, as well as his alleged discharge from HUM's VA transitional housing program for discriminatory reasons.  To avoid any ambiguity, the following claims survive: (1) malicious prosecution, (2) wrongful arrest, (3) false imprisonment, and (4) discrimination relating to Lee's discharge from HUM's VA transitional housing program.

By denying this motion to dismiss in part, the Court does not rule on the overall viability of Lee's surviving claims.  The Court simply concludes § 511(a) of the VJRA does not deprive it of subject matter jurisdiction.  The U.S. defendants shall respond to Lee's complaint by May 20, 2022.  They may file an answer or another motion to dismiss offering alternative grounds for dismissal if they believe such grounds exist.

DATED this 25th day of April, 2022.

                                                        Deborah L. Boardman
                                                       United States District Judge